## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

DARREN VINCENT GESE,                      )
                                          )
       Movant/Defendant,               )
                                          )
v.                                        )      2:07-CV-08027-LSC-JEO
                                          )      2:06-CR-00127-LSC-JEO
UNITED STATES OF AMERICA,                 )
                                          )
       Respondent.                     )

## <u>MEMORANDUM OPINION</u>

The above-captioned matters are before the court on the motion of the defendant, Darren

Vincent Gese (hereinafter "the defendant" or "Gese"), to vacate, set aside or correct his

conviction or sentence under 28 U.S.C. § 2255.  (07-8027 at Doc. 1 (hereinafter "Motion")).[1]

Upon consideration, the court finds that the motion is due to be denied.

## I.      BACKGROUND

The Grand Jury for the Northern District of Alabama returned an indictment on March

29, 2006, charging the defendant with using a facility and means of interstate commerce to

knowingly persuade, induce, and entice an individual who had not attained the age of 18 years, to

engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count One), and knowingly

traveling in interstate commerce from the State of Alabama to the State of Florida for the purpose

of engaging in illicit sexual conduct with another person, in violation of 18 U.S.C. § 2423(b)

(Count Two).   (06-0127 at Doc. 6).  The defendant was arraigned on April 13, 2006, and the

court appointed Attorney Rick L. Burgess to represent him.  *Id*. at Doc. 8.

---

[1]References herein are to the document numbers assigned by the Clerk of the Court in each of the intertwined cases.
The documents will be distinguished by the court case number.  The pages referenced in the Motion are to the actual pages, not
the page numbers in the upper-right hand corner.

On May 25, 2006, the defendant pled guilty to Count One of the indictment.  The government represented that it would move to dismiss Count Two of the indictment at the time of sentencing.  The parties negotiated a plea understanding and a written plea agreement was filed the same day.  *Id*. at Doc. 24.  As part of the plea agreement, Gese attested as follows:

> **The defendant hereby stipulates to the accuracy of the following information:**
>
> In or about October, 2005, the defendant met a white female in an on-line chat room.  The female is from New Jersey.  The defendant learned that the female was 14 years old.  For approximately 5 months, and after learning the female was 14 years old, the defendant and the minor female communicated both by computer via the internet and by telephone in interstate commerce.  During this time, the defendant and the minor female talked about having sex and exchanged nude photos of one another.
>
> In about January, 2006, while communicating with the minor female by computer via the internet and by telephone, the defendant learned the minor female was going to be in Pensacola, FL, attending a horse show.  The defendant made arrangements at his work to be in or around Pensacola on the weekend the minor female was going to be in Pensacola.  On or about February 24, 2006, the defendant traveled from Alabama to Pensacola, FL, where he met the minor female.  While in Pensacola, the defendant and the minor female went to the defendant's motel room, and the defendant performed oral sex on the minor female and had sexual intercourse with her.

*Id*. at pp. 2-3.

The written plea agreement also contains the following waiver:

> **As a term and condition of this Plea Agreement, I, Darren Vincent Gese, hereby waive my right to appeal my conviction in this case, any fines, restitution, and/or sentence (including one for revocation of release) that the court might impose upon me, and the right to challenge any sentence so imposed or the manner in which the sentence was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255, subject to the following limitations:**
>
> **The defendant reserves the right to contest in an appeal or post-conviction proceeding:**

      **(A)**     **Any sentence imposed in excess of the applicable statutory maximum sentence(s);**

      **(B)**     **Any sentence that constitutes an upward departure from the advisory guideline sentencing range calculated by the court at the time sentence is imposed; and**

      **(C)**     **Ineffective assistance of counsel.**

      **The defendant acknowledges that before giving up these rights, he discussed the Federal Sentencing Guidelines and their application to his case with his attorney, who explained them to my satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.**

      **I, Darren Vincent Gese, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.**

*Id*. at pp. 5-6 (emphasis in original).

At the conclusion of the Plea Agreement, Gese acknowledged:

      I have read and understand the provisions of this agreement consisting of <u>ELEVEN</u> (11) pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence in my behalf, to maintain my privilege against self-incrimination and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

*Id*. at p. 11 (bold in original).

During the course of the plea hearing, the court determined that the defendant understood the penalties for perjury, that he had obtained his GED, that he could read, write, and speak the English language, and that he had read, initialed, signed, and understood everything in the Guilty Plea Advice of Rights certification. (06-0127 at Doc. 27 at pp. 3-4). Specifically, the following

colloquy occurred:

>THE COURT: Did your lawyer go over the document with you as well?
>
>THE DEFENDANT: Yes, Your Honor.
>
>THE COURT: Based upon your reading of the Document and your Attorney's explanation of it to you, do you believe that you understand everything that's in that document?
>
>THE DEFENDANT: Yes, Your Honor.
>
>THE COURT: In other words, it sets out a bunch of rights and information for you, rights that you have.  Do you understand those rights that you read?
>
>THE DEFENDANT: Yes, Your Honor.
>
>THE COURT: Your lawyer is standing there with you.  How has he done as an attorney goes?
>
>THE DEFENDANT: He has done very well, Your Honor.
>
>THE COURT: Do you have any complaints or problems with his representation of you?
>
>THE DEFENDANT: No, Your Honor.

*Id*. at p. 4.

The court then went over the defendant's rights with him and explained to him the rights he would give up by pleading guilty.  Additionally, the court went over the charge that the defendant was pleading guilty to, in detail, as follows:

>THE COURT: You will be pleading guilty to count one of the indictment. Count one charges you with a violation of 18 USC § 2422 B.  It's generally described as coercion and enticement of a minor to engage in sexual activity.  To prove you guilty of that offense, the government must prove the following things.
>
>First, that you knowingly used a facility and means of interstate commerce - - that is, a computer and a telephone - - to attempt to persuade, induce, or entice an individual under the age of 18 to engage in sexual activity as charged.

4

Second, that you believed that such individual was less than 18 years of age when you conducted the activity.

Third, that if the sexual activity had occurred, you would have been charged with a criminal offense.

And, fourth, that you acted knowingly and willfully.

Knowingly, as that term is used, means the act was done voluntarily and purposefully, with specific intent to do something the law forbids. . . .

Do you understand what the government has to prove to prove you guilty of that particular offense?

THE DEFENDANT: Yes, Your Honor.

*Id*. at pp. 8-9.  The court then advised the defendant of the statutory range of punishment that he

faced for that offense.  *Id*. at pp. 9-10.

Moving to the substance of the plea agreement, the court asked the defendant whether he

acknowledged that the factual basis as stated in the plea agreement was true and accurate and

whether he should rely on it in determining an appropriate sentence, and the following discussion

occurred:

THE DEFENDANT: I had some reservations about that, Your Honor, and I spoke with Mr. Burgess about that.

MR. BURGESS: If I can clarify?

THE COURT: Yes.

MR. BURGESS: There was one thing that we wanted to let you know that should supplement the factual allegation, and that was that at the initial contact with this young lady, that she had a profile saying that she was 18 years old.  And for about three months during these conversations, phone calls, et cetera, she continued to represent that she was 18 years old.  He did later find out that she was 14, but that was part of his reservation.

THE COURT: He found out she was 14, I assume, prior to the conduct with which he is charged in this case?

MR. BURGESS: Prior to the trip to Florida, yes.

THE DEFENDANT: Yes, Your Honor.

THE COURT: And that is the trip to Florida and the setting up, I assume, of the trip to Florida was prior to this - - was subsequent to finding out she was 14?

MR. BURGESS: Yes, Sir.

THE COURT: Is that correct?

THE DEFENDANT: There was a discussion in the past, prior to my finding out she was 14. But after I found out she was 14, I did not, I did not engage in that activity.

THE COURT: All right. You are charged with utilizing computers and phones to entice a minor.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay, this is my question. Did you utilize the computers and phones to entice the minor to engage in sexual activity after you knew the minor was, in fact, a minor, was less than 18 years of age?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. What you are saying is that at the beginning, for a few months of your activity with the minor, you thought she was 18?

THE DEFENDANT: Yes, Your Honor.

THE COURT: But once you found out 14, you continued on with the conduct of enticing this minor.

THE DEFENDANT: Yes, Your Honor.

THE COURT: With the assistance and use of a computer and  - -

THE DEFENDANT: Yes, Your Honor.

6

> THE COURT:  - - With that addition, the facts as stated in the agreement are true and accurate and I should rely on them?
>
> THE DEFENDANT: Yes, Your Honor.

(06-0127 at Doc. 27 at pp. 13-15).

After determining that the defendant was satisfied with his counsel and that he had read and understood all the terms of his plea agreement, the court engaged the defendant and his counsel in the following colloquy regarding his waiver of his right to appeal his conviction:

> THE COURT: When you signed it further on page six, were you acknowledging that the agreement was giving up your right to appeal or to file a petition pursuant to 28 U.S.C. Section 2255 except for the specific circumstances stated there, like that I give you a sentence that exceeds the maximum statutory limit or I give you a sentence that constitutes an upward departure from the advisory guideline range?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And then, of course, when you signed it at the end, you were acknowledging that was your agreement; is that correct?
>
> THE DEFENDANT: Yes, Your Honor.

*Id*. at p. 15.

The court then asked the prosecutor to state some of the facts the Government would expect to offer if the case were to go to a jury trial.  The court also instructed the defendant to listen to the prosecutor so that he could inform the court if he did not believe any of the statements to be true or accurate.  *Id*. at p. 16.  The prosecutor then rendered the factual basis, as set out previously herein, and the following discussion ensued:

> THE COURT: Did you hear what the Government said?
>
> THE DEFENDANT: Yes, Your Honor.

7

> THE COURT: Is it substantially correct?
>
> THE DEFENDANT: The period of time that I knew she waw 14 was like five months.  That was a period of three months during our six month relationship.
>
> THE COURT: Okay.
>
> THE DEFENDANT: The first three months were under the impression that she was 18.  And the following three months were the period that I knew she was 14, and then subsequently got involved with the judicial system.
>
> THE COURT: The same explanation that we went through earlier?
>
> THE DEFENDANT: Yes, Your Honor, it was.
>
> THE COURT: Did you do the things the government says you did, with that explanation?
>
> THE DEFENDANT: Yes, Your Honor.

*Id*. at pp. 17-18.  The court then made the following findings:

> THE COURT: It is the finding of this Court that the defendant is aware of the nature of the charge and consequences of the plea, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.  And, further, that the defendant is fully competent and capable of entering that plea.
>
> The plea is therefore accepted and the defendant is judged guilty of that offense.

*Id*. at p. 20.

A sentencing hearing was set for August 24, 2006.   On August 2, 2006, the defendant filed objections to the "Presentence Investigative Report."  Specifically, the defendant (1) noted that the nude photos exchanged between the defendant and the victim were exchanged before the defendant found out that the victim was under 18 years of age (paragraph 7); (2) objected to a two point enhancement for unduly influencing a minor as the minor readily admitted she was the

8

sexual aggressor (paragraph 14); (3) objected to a two point enhancement for use of a computer to facilitate the sexual conduct because after the defendant was aware that the victim was a minor, they only communicated via cell phone (paragraph 15); (4) noted that he provided for his family until he lost his job due to his arrest (paragraph 33); (5) objected that the presentence report did not contain test results showing that he did not have pedophelic traits (paragraph 38); and (6) noted that he not only served in the United States Army, but received numerous awards and recognition for his service (paragraph 45).  (06-0127 at Doc. 26).

At the sentencing hearing, the court first noted that the Probation Office had modified paragraph 7 of the Presentence Report to reflect that the nude pictures were sent before the defendant was aware that the victim was a minor.[2]  *Id*. at Doc. 34 at pp. 2-3.  The defendant's counsel was successful in persuading the court to modify paragraph 14 of the Presentence Report to take out the two level enhancement for undue influence of a minor.  Specifically, the court ruled:

> All right.  I am going to sustain the objection with regard to undue influence.  I think it is a very close call.  But based on the victim's initial postings and continued postings to the internet as well as the conduct of the victim throughout, the psychological position of the defendant now indicating what his, I guess, mental health has been throughout this thing, I don't believe that undue influence of the type that is appropriate, that this would be appropriate for the two level enhancement.  Although I will note that I don't know that it's going to make a significant difference in my sentence in this case, and we'll talk about that in just a minute.
>
> But with regard to that, the presentence report will be modified to take out the two level enhancement for use of a computer.  That will result in an offense level of 25, and when combined with criminal history category of Roman Numeral I results in a guideline imprisonment range from 60 to 71 months . . .

---

[2]The Probation Office also modified the Presentence Report to reflect the defendant's requested changes in paragraphs 33, 38, and 45 prior to the Sentencing Hearing.  (06-0127 at Doc. 27 at p. 12).

*Id*. at p. 13.  However, the court overruled the defendant's objection regarding the use of the

computer (paragraph 15) as the defendant agreed and stipulated to that fact in the plea agreement

and pled guilty to the charge at the guilty plea hearing.  *Id*. at p. 10.

Defense counsel also filed a Motion for Variance from the range of custody indicated in

the presentence report and asked instead that the court sentence the defendant to the mandatory

minimum of 60 months because his case was not "the typical case that comes here."  (06-0127 at

Doc. 28 at p. 1).  Specifically, the defense argued that the defendant (1) was not seeking a minor

and believed the victim to be 18 years old for three to four months, (2) was "caught" because he

went to New Jersey to apologize to the minor's family because he felt such extreme guilt; (3)

gave law enforcement the name of another adult that the minor had met on the internet and with

whom she had sexual relations; and (4) does not have pedophelic traits.  (06-0127 at Doc. 28 and

Doc. 34 at pp. 14-15).

In sentencing the defendant, the court noted:

> All right.  Let me say this.  The guideline range is just that - - advisory.  I
> am not bound by the advisory guideline range.  This is an important factor that I
> am to consider but I am also to consider all factors in 18 USC 3553 in determining
> what is an appropriate sentence to give the defendant in this case.

> I have ruled on the objections and make specific findings that the guideline
> offense level in this case is 25, when combined with criminal history category of
> Roman Numeral I as I have said before results in a guideline range from 61 to 70
> months and fine range from $10,000 to $100,000.  Supervised release following
> imprisonment in this case is from any term of years or the life of the defendant.

> I will note that I agree that this is not a typical case.  The defendant in this
> case, it appears, did not set out to find a minor.  While the government may make
> argument that he wiped his computer clean, and I acknowledge that, but there is
> no evidence before me that would indicate that he was setting out to find a minor
> because the person that he got involved with was, by all accounts, representing

herself to be 18 years of age.  The difficulty is though when the defendant realized this person was only 14, the defendant continued the relationship knowing full well it was wrong, knowing full well he shouldn't.  He went to Florida, made arrangements to meet the victim in Florida, and had a sexual encounter with her.

I recognize from the statements of the victim and the representations made by everybody in this case that the victim had a lot to do with it, the conduct.  The victim represented in her statement that she was the aggressor, if you will, in the encounter.  The problem is, though, the defendant was more than ten years older than her, almost 20 years older . . .

That conduct is not permitted and should not be permitted.  So while it is not your typical case, the fact that it's not typical is a plus for the defendant in that the defendant wasn't found with all kinds of child pornography on his computer and going out soliciting a minor from the get-go.  But it's against the defendant in not being typical in that the defendant found out there really was a person out there who was, the defendant found out was 14 and went and had sex with this person.  Not just sought to - - accomplished it.  All being the result of the enticement, the involvement of him with her, and that cannot be permitted.

. . . I find that the sentence I am going to impose is, which is going to be within the guideline range that I have determined in this case, is appropriate considering the factors in 18 USC Section 3553.  Particularly, I will note, find particular relevance the factors assessed to reflect the seriousness of the offense, promote respect for the law and provide just punishment for this offense.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of this court that the defendant is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a period of 70 months.  Following your imprisonment, you will be placed on supervised release for a period of five years. I find that the sentence imposed is sufficient to accomplish the purposes set forth in 18 USC Section 3553 but not more than necessary to accomplish those purposes.

*Id*. at Doc. 34 at p. 17-19.  The court then advised the defendant of his right to appeal:

You have the right to appeal the sentence imposed within ten days if you believe the sentence is in violation of the law.  However, you may have waived some or all of your rights as part of your plea agreement.

If you have entered into a plea agreement which does waive some or all of your rights to appeal your sentence, such waivers are generally enforceable.  If you believe it is unenforceable, you can present that theory to the appropriate appellate

court.

       With few exceptions, however, any notice of appeal must be filed within ten days of judgment being entered in your case.  If you are unable to pay the cost of appeal, you may apply for leave to appeal in forma pauperis and for the appointment of counsel.  If such a request is granted, the Clerk of Court would assist you in preparing and filing a notice of appeal.

*Id*. at pp. 22-23.  The defendant did not file a notice of appeal challenging the plea or sentence.

       The defendant filed the present motion *pro se* on August 27, 2007.  (07-8027 at Doc. 1).

In it, he asserts that trial counsel was ineffective in the following ways:

1.     [He] failed to apply the only possible defense that would have allowed the evidence to show that the government could not meet its burden because no scienter could have been established by statute.  And, had [he] did [sic] so, I would have eventually [been] acquitted of the offense charged (*id*. at p. 4);

2.     [He] failed to raise and object to the incorrect assessment of the factual basis created in the plea-waiver, affected the validity of the waiver itself.  The petitioner contends had his counsel objected and moved to strike the plea, the Court would have done so, and the petitioner would have been able to appeal the conviction and sentence imposed (*id*. at p. 5);

3.     [He] failed to press a claim and argue that due to the unopposed inaccuracies in the factual basis, prior to the acceptance of the plea by the Court, the failure of counsel to object, affected the validity of the plea itself.  Had plea-counsel did so [sic], the petitioner would have been able to appeal the conviction and sentence imposed  (*id*. at p. 7); and,

4.     [He] failed to file a notice of appeal, after being requested to do so, after the sentence based upon the inaccurate factual basis incorporated in the plea waiver (*id* at p. 8).

The court entered an order and required the United States to appear and show cause why the

requested relief should not be granted.  After the defendant filed his petition, Attorney David

Gespass entered a notice of appearance on his behalf.  (07-8027 at Doc. 6).  The United States

filed a response (07-8027 at Doc. 10 (hereinafter "Response")) and later filed a supplement to its

response.  (*Id*. at Doc. 13 (hereinafter "Supplemental Response")).  The defendant was afforded

an opportunity to reply, which he did, through counsel, on March 15, 2008.  (07-8027 at Doc. 15

(hereinafter "Reply")).

## II.      DISCUSSION

### A.      Ineffective Assistance of Counsel

The defendant alleges that his counsel was ineffective in numerous ways, as set out

above.  The United States retorts that the claims are without merit.  (07-8027 at Doc. 10, pp. 24-

30; Doc. 13, pp. 14-18).

> A convicted defendant's claim that counsel's assistance was so defective
> as to require reversal of a conviction or . . . sentence has two components.  First,
> the defendant must show that counsel's performance was deficient.  This requires
> showing that counsel made errors so serious that counsel was not functioning as
> the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the
> defendant must show that the deficient performance prejudiced the defense.  This
> requires showing that counsel's errors were so serious as to deprive the defendant
> of a fair trial, a trial whose result is reliable.  Unless a defendant makes both
> showings, it cannot be said that the conviction or . . . sentence resulted from a
> breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  The defendant must

satisfy two requirements to prevail on an ineffective assistance of counsel claim.  He must show

that "(1) 'counsel's representation fell below an objective standard of reasonableness,'

*Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064, and that (2) 'there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different,'

*id*. at 694, 104 S. Ct. at 2068.  In the Third Circuit Court of Appeals, we have referred to the

latter element as the 'prejudice' prong and the former element as the 'performance' prong."

*Reece v. United States*, 119 F.3d 1462, 1464 n.4 (11th Cir. 1997).  When considering such

13

claims, a Court need not address both components because a failure to demonstrate either prong

constitutes a failure to demonstrate ineffective assistance of counsel. *Bottoson v. Moore*, 234

F.3d 526, 532 (11th Cir. 2000); *see also Reece*, 119 F.3d at 1464 n.4.

In examining the first prong under *Strickland*, the Eleventh Circuit has articulated the

relevant considerations as follows:

> The standard for counsel's performance is reasonableness under prevailing professional norms. The purpose of ineffectiveness review is not to grade counsel's performance. . . . To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled. . . . The petitioner must establish that particular and identified acts or omissions of counsel were outside the wide range of professionally competent assistance.

> Courts must indulge [the] *strong presumption* that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment. Thus, counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy. Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one. . . . [B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a *petitioner must establish that no competent counsel would have taken the action that his counsel did take*. . . .

> In reviewing counsel's performance, a court must avoid using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time. [I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Johnson v. Alabama*, 256 F.3d 1156, 1176-77 (11th Cir. 2001) (quoting *Chandler v. United*

*States*, 218 F.3d 1305, 1313-16 (11th Cir. 2000) (en banc) (citations and internal quotation marks

from *Chandler* omitted in *Johnson*) (emphasis added).

With regard to the second prong under *Strickland*, it is not enough to show that an error

had some conceivable effect on the outcome of the proceeding. *Robinson v. Moore*, 300 F.3d

14

1320, 1343-44 (11th Cir. 2002).  To succeed on an ineffective assistance claim, the defendant must show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different.

Because the plaintiff's first three claims are substantially similar, the Court will address them together and will address the claims regarding the appeal request separately herein.

### 1.  Claims Regarding the Guilty Plea & Factual Basis

The defendant first asserts that he could not be guilty of the crime to which he pled guilty because "the record is, at best, uncertain as to whether petitioner engaged in any prohibited conduct after he learned the minor's true age."  (07-8027 at Doc. 15 at p. 4).  Specifically, the defendant asserts that ambiguities exist in the record as to whether the defendant used a computer after he learned the victim's age.  Based upon those ambiguities, the defendant now argues that his statement at the plea hearing that he had used a computer and phone to entice a minor into sexual activity is "directly contradicted, at least as regards the use of a computer, by objections his counsel raised to the presentence report.  If, in fact, petitioner did not engage in any conduct to persuade, induce, entice, or coerce the minor after he learned her true age, he is not guilty of the charge to which he pled.  And if, in fact, his attorney advised him to plead guilty to that charge, knowing that no such conduct had occurred after he learned the minor's true age, Mr. Burgess advised him to plead guilty to an offense of which he was innocent."  *Id*. at p. 5.

The defendant goes on to argue that any enticement of the minor occurred before he knew that she was a minor, and that while he did arrange to meet the victim after he learned that she was a minor, that is not enough to establish a violation of § 2422(b).  *Id*. at p. 7.  In support of this argument, the defendant cites *United States v. Tykarsky*, 446 F. 3d 458, 482 (3rd Cir. 2006),

15

for the proposition that "Section 2422(b) does not prohibit all communications with a minor; nor does it prohibit all communications that relate to illegal sexual activity.  It only proscribes communications that actually or attempt to knowingly 'persuade,' 'induce,' 'entice' or 'coerce' a minor to engage in illicit sexual activity.  That [the defendant] arranged the meeting with the putative minor after April 30, therefore, does not establish that he violated § 2422(b) after that date."  The court, however, finds that *Tykarsky* has no bearing on the instant case.

In *Tykarsky*, the defendant was found guilty by a jury of violating § 2422(b), among other things.  Tykarsky's communications with the purported minor began before the enactment of the PROTECT Act[3] and continued after its effective date.  Nonetheless, he was sentenced to the mandatory minimum sentence required by the Act.  On appeal, Tykarsky argued that the "enticement" of the minor occurred prior to enactment, and therefore, his mandatory minimum sentence was in error.

Most notably, Tykarsky's challenge to his sentence was on ex post facto grounds ("if a defendant completes a crime before an increased penalty takes effect, it would violate his right not to be subject to ex post facto legislation to impose the increased penalty upon him.  *United States v. Julian*, 427 F.3d 471, 482 (7th Cir. 2005))."  *Tykarsky*, 446 F.3d at 480. In finding that the jury "could have convicted Tykarsky based solely on the pre-April 30 communications," the Third Circuit reasoned, in part, as set out by the defendant above, and concluded that the District Court should have required a special verdict finding that the enticement occurred after the enactment of the PROTECT Act.  The court noted:

---

[3]Pursuant to Section 103 of the PROTECT (Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today) Act, which took effect on April 30, 2003, Congress amended § 2422(b) to require a minimum sentence of five years.

Moreover, we should be especially cautious in making assumptions about how a properly instructed jury would have found where, as here, the statute under which the defendant was convicted vests broad discretion in the jury.  Although we have concluded that § 2422(b) is not unconstitutionally vague, we have also observed that the terms "persuade," "entice," "induce" and "coerce" are somewhat imprecise, requiring consideration of subtle nuances in a given fact pattern.  For example, how much more is needed that simply asking?  Can a person be guilty if the minor has already indicated that he or she wants to engage in sexual activity?  The absence of statutory guidance indicates that the jury, rather than an appellate court, should decide whether and when the defendant crossed the line from mere conversation to attempted persuasion, inducement, enticement or coercion.

*Tykarsky*, 446 F. 3d at 483.  However, the Third Circuit's dicta regarding § 2422(b) is inapposite to the instant case.  Even if it weren't, however, it would not support the defendant's ineffective assistance of counsel claim.  To the contrary, the Third Circuit's opinion supports dismissal of the defendant's ineffective assistance of counsel claims.

The defendant urges the court to believe that "the content of the communications between petitioner and the minor after he learned her true age is crucial [because] [t]he mere fact that the petitioner continued to communicate, or even that those conversations concluded discussions of a sexual nature, with her is not evidence that he violated § 2422(b)."  (Doc. 15 at p. 6).  However, the Third Circuit's reasoning on this point is directly contradictory to the rule the defendant attempts to glean from its opinion:

A jury could endorse the Government's view here that the communications should be considered together that they constitute a "continuing offense" in violation of § 2422.  It could also conclude that both the April 29 communication violated § 2422(b) and that the subsequent May 1 communication did not entail any enticement or persuasion.  Indeed, if the April 29 conversation accomplished its purposes of persuading Jane Minor to engage in sexual activity, then there would be no need for any further persuasion or enticement.

*Tykarsky*, 446 F. 3d at 482.  Through its plain language, the Third Circuit's decision makes clear that a determination of which particular communications might induce or entice the minor is a

17

matter within the jury's province.  Thus, the defendant's assertion that any enticement occurred

prior to his learning that the victim was a minor and that while he did arrange to meet (and

subsequently not only did meet, but also engaged in sexual intercourse with the minor) the victim

after he learned that she was a minor comes too late.  Because the defendant chose not to present

his case to a jury, he is the only person who could decide at what point he ceased persuading,

inducing, or enticing the minor victim.  Through his plea agreement and his oral representations

to the court at both the plea hearing and the sentencing hearing, the defendant admitted that he

engaged in that activity after he learned the minor's true age.

At the time of his guilty plea, the court engaged the defendant in a lengthy colloquy about

the factual basis contained in the plea agreement and about the defendant's intent to enter a guilty

plea.  While the defendant, through counsel, made some clarifications as to the factual basis, at

no time did he argue that he did not intend to plead guilty to the § 2422(b) charge.  Therefore, his

assertion now that he could not have been guilty of a § 2422(b) violation because he did not

possess the requisite scienter or that his trial counsel should have and did not object to

inaccuracies in the factual basis are simply insufficient.

The defendant has not shown that "counsel's representation fell below an objective

standard of reasonableness."  To the contrary, the defendant has shown that his counsel was

successful in objecting to and successfully arguing that that plea agreement be amended to clarify

that the defendant was not aware that the victim was a minor when he initially contacted her, and

to remove the two-point enhancement for undue influence, among other things.  Defendant's

counsel did attempt to have the presentence report modified to take out the two-point

enhancement for use of a computer, but the court overruled his objection because the defendant

agreed and stipulated in the plea agreement to the fact that he used a computer in the plea

agreement and he pled guilty to the charge at the plea hearing.  The court went over this aspect of

the defendant's plea in detail.  Specifically, the court questioned the defendant as follows:

> THE COURT: He found out she was 14, I assume, prior to the conduct with which he is charged in this case?

> MR. BURGESS: Prior to the trip to Florida, yes.

> THE DEFENDANT: Yes, Your Honor.

> THE COURT: And that is the trip to Florida and the setting up, I assume, of the trip to Florida was prior to this - - was subsequent to finding out she was 14?

> MR. BURGESS: Yes, Sir.

> THE COURT: Is that correct?

> THE DEFENDANT: There was a discussion in the past, prior to my finding out she was 14.  But after I found out she was 14, I did not, I did not engage in that activity.

> THE COURT: All right.  You are charged with utilizing computers and phones to entice a minor.

> THE DEFENDANT: **Yes, Your Honor**.

> THE COURT: Okay, this is my question.  **Did you utilize the computers and phones to entice the minor to engage in sexual activity after you knew the minor was, in fact, a minor, was less than 18 years of age?**

> THE DEFENDANT: **Yes, Your Honor**.

> THE COURT: Okay.  What you are saying is that at the beginning, for a few months of your activity with the minor, you thought she was 18?

> THE DEFENDANT: Yes, Your Honor.

> THE COURT:  **But once you found out 14, you continued on with the conduct of enticing this minor.**

THE DEFENDANT: **Yes, Your Honor.**

THE COURT: **With the assistance and use of a computer and  - -**

THE DEFENDANT: **Yes, Your Honor**.

THE COURT:  - - With that addition, the facts as stated in the agreement are true
and accurate and I should rely on them?

THE DEFENDANT: Yes, Your Honor.

(06-0127 at Doc. 34 at pp. 13-15)(emphasis added).

As set out previously herein, the defendant was aware of the factual basis for the claim at the time he entered his guilty plea.  The Court went over the factual basis with the defendant.  A discussion was had on the record wherein the defendant expressed his concerns with the basis and those concerns were resolved with the defendant acknowledging that he continued contact with the victim via computer and cell phone after learning that she was a minor.  Finally, the court explicitly found that there was sufficient factual basis to support the defendant's guilty plea.  (06-0127 at Doc. 27 at pp. 13-20).  The defendant does not offer any explanation as to why he pled guilty to the charge and agreed to the factual basis articulated by the prosecution in the plea agreement and at the plea hearing despite his present contentions.  The court cannot on the evidence before it find that the defendant's counsel was ineffective for allowing him to plead guilty.  To the contrary, as set out herein, the court finds that the defendant's counsel was successful in having the court reduce the guideline range that was applicable to the defendant. The defendant's ineffective assistance of counsel claim, therefore, is due to be denied with regard to the sufficiency of the § 2422(b) charge.

### 2. Claim Regarding Direct Appeal

The defendant next claims that "counsel's failure to file the notice of appeal was unreasonable per se."  The defendant asserts that "he requested by letter to attorney Rick Burgess to appeal [his] conviction within the time proscribed by the appellate procedure."  (07-8027 at Doc. 2 at pp. 19-20).  In support of that contention, the defendant attaches a handwritten letter, dated Tuesday, September 5, 2006, which reads:

> Dear Mr. Burgess,
>
> I am writing this letter to inquire as to the merits of an appeal in my case. Specifically, with regards to the Judge's statement that he believed that I did not intend to do this.[4]
>
> I look forward to hearing from you on this matter.
>
> Sincerely,
> Darren V. Gese

(*Id*. at Ex. 2a).

In *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029 (2000), the Supreme Court applied the *Strickland* test to a claim involving an attorney's failure to file an appeal for a client, establishing a three-step analytical framework used in assessing such claims.  The court first

---

[4] Gese's flawed perception that the court somehow insinuated that it "did not believe [he] intended to do this," is just that.  At the sentencing hearing, the court acknowledged that, by all accounts, Gese did not search out a minor victim; but that even after learning the victim was 14 years old, Gese

> continued the relationship knowing full well it was wrong, knowing full well he shouldn't.  He went to Florida, made arrangements to meet the victim in Florida, and had a sexual encounter with her.
>
> . . .
>
> That conduct is not permitted and should not be permitted.  So while it is not your typical case, the fact that it's not typical is a plus for the defendant in that the defendant wasn't found with all kinds of child pornography on his computer and going out soliciting a minor from the get-go.  But it's against the defendant in not being typical in that the defendant found out there really was a person out there who was, the defendant found out was 14 and went and had sex with this person.  Not just sought to - - accomplished it. All being the result of the enticement, the involvement of him with her, and that cannot be permitted.

(06-0127 at Doc. 27 at pp. 17-19).

must establish whether a defendant requested that his attorney file a notice of appeal.  "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Flores-Ortega*, 528 U.S. at 477.  Therefore, if a defendant requested that his attorney file an appeal, but his attorney did not, then counsel's failure to file an appeal is *per se* unreasonable. *Id*.

If a defendant neither instructs counsel to file an appeal, nor asks that an appeal be taken, the court must then determine whether counsel "consulted" with the defendant about an appeal. *Id.* at 478.  In this context, the term "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.*  "If counsel has consulted with the defendant, . . . [c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. *Id*.

If counsel failed to consult with the defendant, "the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id*.  In this final category of cases, the Court "reject[ed] a bright-line rule that counsel must always consult with the defendant regarding an appeal." *Id*. at 480.  Rather, the Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*.  "This inquiry is informed by several 'highly relevant' factors, including: whether the conviction follows a guilty plea, whether the defendant received the sentence he bargained for, and 'whether

the plea [agreement] expressly . . . waived some or all appeal rights.'" *Otero v. United States*,

499 F.3d 1267, 1270 (11th Cir. 2007) (quoting *Flores-Ortega*, 528 U.S. at 480).

The defendant's trial counsel attests, through a sworn affidavit, in pertinent part as

follows:

> I find no copy of the letter he labels as "Exhibit 2b" in my files. Mr. Gese
> did not inform me that he desired to appeal anything regarding his case. The only
> thing he told me was that he hoped that the New Jersey case would either be
> dismissed or any sentence he might receive there would run concurrent with his
> federal sentence. I note that Mr. Gese's judgment of conviction was August 24,
> 2006. Assuming for the sake of argument that he did mail me a letter on
> September 5, 2006, the date it is signed in his exhibit; this is 12 days from the date
> of his judgment. His time for filing an appeal had already expired by the date of
> his own letter and that doesn't even count additional days for mailing before it
> could have possibly gotten to my office. Finally, Mr. Gese waived his right to
> appeal in his plea agreement.

(Doc. 10 at Attachment F at p. 1). The court finds that trial counsel was not ineffective for

failing to file a notice of appeal for several reasons.

First, the defendant never requested that a notice of appeal be filed on his behalf. The

letter that the defendant attaches, purporting to request an appeal, is nothing more than inquiry

about an appeal. As set out above, the defendant specifically states, "I am writing to inquire as to

the merits of an appeal in my case." Therefore, counsel's failure to file an appeal cannot be

considered per se unreasonable.

Next, while the record is devoid of any reference to counsel consulting with the defendant

about an appeal,[5] the court finds that a failure to do so would not be unreasonable in the instant

---

[5]The court does note, however, that the court did advise the defendant of his right to file an appeal at the sentencing
hearing as follows:

> If you have entered into a plea agreement which does waive some or all of you rights to appeal your
> sentence, such waivers are generally enforceable. If you believe it is unenforceable, you can present that
> theory to the appropriate appellate court.

case.  To find that counsel's failure to consult with the defendant constitutes deficient performance, the court would have to find, either (1) that a rational defendant would want to appeal, or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.  This the court cannot do.

The court agrees with the United States that a rational defendant would not want to appeal the sentence that he voluntarily, knowingly, and intelligently bargained for, particularly where the bargain included dismissal of a charge that would have enhanced his sentencing range by two points.  As stated previously, at no time during the plea hearing or sentencing hearing did the defendant express discontent with his counsel.  To the contrary, Gese at all times maintained satisfaction with counsel.  Given the valid appeal waiver in the plea agreement, the fact that Gese did not request an appeal, and the fact that his sentence was the result of a bargained for plea, the court finds that no rational defendant would want to appeal, and because Gese did not effectively communicate an intent to appeal, counsel was not under a constitutional obligation to consult Gese about an appeal.  As such, the court cannot find that Gese received ineffective assistance of counsel with regard to filing an appeal.

---

With few exceptions, however, any notice of appeal must be filed within ten days of the entry of judgment being entered in your case.  If you are unable to pay the cost of appeal, you may apply for leave to appeal in forma pauperis and for the appointment of counsel.  If such request is granted, the clerk of court would assist you in preparing and filing your notice of appeal.

(Doc. 10 at Attachment H, at p. 23).

**CONCLUSION**

Premised on the foregoing, the defendant's motion to vacate is due to be denied and dismissed with prejudice.  An appropriate order denying this motion will be entered contemporaneously herewith.

Done this 29th day of October 2008.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

153671